**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLIE LLOYD III,

        Plaintiff,

   v.

MICHAEL J. ASTRUE,

        Defendant.

_____/

No. C-11-4902 EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING CASE**

**(Docket Nos. 18, 24)**

## I.   INTRODUCTION

Plaintiff Charlie Lloyd requests review of an adverse determination on his application for disability insurance and Supplemental Security Income (SSI) benefits by the Social Security Administration (SSA).  Pending before the Court is Plaintiff's motion for summary judgment (Docket No. 18) and Commissioner of Social Security Michael Astrue's ("the Commissioner's") cross-motion for summary judgment (Docket No. 24).  Plaintiff argues that the SSA's decision was erroneous for, among other reasons, neglecting to adequately address his vision impairments.

Having considered the papers submitted in this matter, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's motion, and **REMANDS** for reconsideration in light of this opinion.

## II.   FACTUAL & PROCEDURAL BACKGROUND

A.    History of Disability

Plaintiff is a 57 year old man born December 31, 1955.  AR 246-52 (application summary). In December 1971, Plaintiff was struck in the right eye by a glass fragment, ultimately resulting in

the loss of that eye.  AR 231-45 (hospital records).  Despite the loss of his right eye, Plaintiff was able to work on and off for approximately the next thirty years, including as a delivery driver in 1999 and 2000.  *See* AR 74-81 (earnings history).

At some point, Plaintiff came to receive disability insurance benefits from the SSA, which benefits were terminated in 1997 or 1998.  AR 62 (letter re request to reopen termination of benefits); AR 63 (request for reconsideration); AR 99 (list of previous determinations).  Following termination of these benefits, Plaintiff again requested benefits in 2002, which were denied.  *See* AR 99; Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") 23.  Plaintiff failed to appeal each determination in a timely manner.  *See* AR 99; Pl.'s Mot. 23.

B.   Current Claim

On May 31, 2007 or June 1, 2007, Plaintiff filed the pending application for disability insurance and Supplemental Security Income (SSI) benefits for a disability beginning on January 1, 2002.  *See* AR 246-252 (application summary).  The SSA denied Plaintiff's application both initially and on reconsideration, after which a hearing was held in front of an ALJ, Randolph E. Schum, on August 24, 2009.  *See* AR 254-58 (notice of disapproved claims), 260-65 (notice of disapproved claims on reconsideration), 297-321 (hearing transcript).

On December 4, 2009, the ALJ held that Plaintiff was not disabled pursuant to the Social Security Act.  AR 16-23 (ALJ decision).  The ALJ evaluated Plaintiff's disability claim using the five-step sequential evaluation process for disability benefits required under federal regulations.  *See* 20 C.F.R. § 404.1520.

> **Step one** disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations.  **Step two** disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities.  **Step three** automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix.  Benefits are awarded at step three if claimants are disabled.  **Step four** disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments.  **Step five** disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the

United States District Court
For the Northern District of California

1   government.  Claimants not disqualified by step five are eligible for
2   benefits.

3   *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003) (emphasis added).

4          At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

5   January 1, 2002.  AR 19.  At step two, the ALJ found that Plaintiff suffered from the following

6   severe impairments: depressive disorder NOS, polysubstance abuse in reported remission, loss of

7   right eye, idiopathic shoulder, and low back pain.  *Id.*  At step three, the ALJ determined that

8   Plaintiff did not have an impairment or combination of impairments that met or medically equaled

9   one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, the ALJ

10  found that Plaintiff did not meet the requirements for Section 1.04 (spine disorder), Section 12.04

11  (affective disorder), or Section 12.09 (substance addiction disorder).  AR 19-20.  At step four, the

12  ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, except

13  for work requiring binocular vision, moderate exposure to the hazards of unprotected heights, or

14  constant/regular contact with the general public.  AR 20-22.  Based on this RFC, the ALJ

15  determined, after crediting the testimony of a vocational expert, that Plaintiff was capable of

16  performing past relevant work as a delivery driver, as that position does not require the performance

17  of work-related activities precluded by his RFC.  AR 22.  As he found that Plaintiff could complete

18  past relevant work, the ALJ did not reach step five.  *See id.*

19         Plaintiff appealed administratively on January 31, 2010.  AR 12 (request for review).  He

20  submitted an additional medical assessment by Dr. Gordon J. Sweeney to the Appeals Council.  See

21  AR 267-73 (Sweeney assessment).  On August 5, 2011, the Appeals Council denied Plaintiff's

22  request for review.  AR 5-9 (notice of denial).   This petition ensued.

23  C.     Evidence Submitted Regarding Vision Impairments

24         Over the course of his benefits application, Plaintiff brought up his vision impairments a

25  number of times, both in his own representations to SSA, in medical documentation submitted to

26  SSA, and in his hearing.

27         Plaintiff's benefits application states "I am blind. My blindness began on January 1, 2002."

28  AR 246.  In May 2008, his representative faxed SSA requesting reopening of the termination of his

**United States District Court**
For the Northern District of California

1    prior benefits in 1997 "because of his poor eyesight," among other reasons.  AR 63.  In his

2    September 2008 request for an ALJ hearing, Plaintiff specifically stated that he requests a hearing

3    because "DDS has failed to fully develop the record of all my impairments including, but not limited

4    to, that I am one-eye blind and limited in my good eye . . . ."  AR 42.  Prior to Plaintiff's August 24,

5    2009 hearing, his representative faxed a communication to ALJ Schum stating that "Lloyd's eye

6    pain [B1F/5], [and] monocular vision with glaucoma . . . must be discussed at Step-3 for proper RFC

7    determination."  AR 62.

8         Plaintiff submitted a number of medical records reflecting his vision impairments, including:

9         •    A Highland Hospital discharge summary dated January 6, 1972 showing injury to his

10             right eye (AR 242);

11        •    Highland Hospital emergency records dated June 30, 2005 showing decreased vision

12             starting six months prior, pain in his left eye, acute glaucoma, and 20/30 vision in his

13             left eye (AR 159-63);

14        •    A mental status evaluation by Dr. Faith Tobias dated July 19, 2007 discussing

15             Plaintiff's self-reported vision impairments and ability to perform various motor

16             skills (AR 172-75);

17        •    An ophthamological/optometric examination by Dr. Richard Litwin dated October

18             31, 2007 showing best-corrected left eye vision of 20/60; intraocular tension; and

19             amblyopia ("lazy eye") (AR 191-93); and

20        •    A comprehensive internal medicine evaluation by Dr. Brimmer dated January 8, 2008

21             stating that Plaintiff is "totally blind in the right eye and normal on the left," and

22             diagnosing Plaintiff with 20/40 vision in his left eye (AR 194-98).

23        At his August 24, 2009 hearing, Plaintiff again brought up his vision impairments, stating

24   that "I got poor eyesight. I don't have but one eye."  AR 302.  The ALJ then proceeded to discuss

25   Plaintiff's eyesight, completely omitting any reference to the visual acuity of Plaintiff's left eye:

26        Q    Well, but you had, you only had the one eye since, as you said,
                when you were 16, right?

27        A    I lost the eye.
          Q    Yeah, well, that, so you've been dealing with that since you

28             were sixteen?

4

```
1        A      Um-hum.
         Q      Yes?
2        A      Yes.
         Q      And you were able to work with just the one eye?
3        A      Yeah, I did what I had to do.
```

*Id.* Beyond this brief back-and-forth, the testimony does not reflect any further discussion with

Plaintiff regarding his vision impairments.  Later in the hearing, the ALJ characterized Plaintiff's

vision impairment to a vocational expert as "he has limited depth perception so he should not

perform any work requiring fine ocular vision," but again did not mention Plaintiff's reduced visual

acuity in his left eye.  AR 313.  The vocational expert concluded that someone with this impairment

could perform the work of a delivery driver.  *Id.*

## III.   **DISCUSSION**

Plaintiff now argues that the ALJ failed to properly develop the record, did not conduct a

proper analysis in step four of his decision, and failed to provide analysis of Plaintiff's request to

reopen his previous applications for benefits pursuant to Social Security Ruling (SSR)[1] 91-5p.[2]

A.    Standard of Review

Administrative decisions in social security disability cases are reviewed under a "substantial

evidence test."  *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).  A district court may disturb

the final decision of the SSA "only if it is not supported by substantial evidence or if it is based on

legal error."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (internal quotation marks

omitted).  The Ninth Circuit has stated that "[s]ubstantial evidence means more than a scintilla but

less than a preponderance."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal

quotation marks omitted).  It is "relevant evidence which, considering the record as a whole, a

---

[1] The SSA periodically publishes Social Security Rulings (SSRs), which "represent precedent final opinions and orders and statements of policy and interpretations that [it has] adopted."  20 C.F.R. § 402.35(b)(1).

[2] In addition, Plaintiff submitted argument in his reply brief regarding the impact of reduced visual acuity on the national job base.  *See* Pl.'s Reply, Docket No. 25, at 6:20-7:17.  However, consideration of the national job base takes place during step five, which the ALJ did not reach due to finding that Plaintiff was not disabled at step four.  *See Celaya*, 332 F.3d at 1180.  Should the Social Security Administration reach step five upon remand, it should consider how Plaintiff's visual impairments affect his ability to do other substantial gainful activity.  *See DeLorme v. Sullivan*, 924 F.2d 841, 849-50 (9th Cir. 1991).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   reasonable person might accept as adequate to support a conclusion.  Where evidence is susceptible

2   to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

3   conclusion must be upheld." *Id.*  (internal quotation marks omitted).  "The ALJ is the final arbiter

4   with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d

5   1035, 1041-42 (9th Cir. 2008).  If an ALJ commits an error in a decision, courts generally will

6   nevertheless not overturn the decision if it is clear from the record that the error was

7   "inconsequential to the ultimate nondisability determination . . . ." *Stout v. Commissioner, Social*

8   *Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

9   B.   ALJ Obligation to Develop the Record

10          Plaintiff contends that the ALJ failed to properly develop the record with respect to his

11   alleged visual and mental impairments.  *See* Pl.'s Mot. 11:16-14:15.  Normally, the Social Security

12   Act obligates claimants to furnish medical evidence proving the existence of a disability. 42 U.S.C.

13   § 423(d)(5)(A); 20 C.F.R. § 404.1512.  However, "[t]he ALJ always has a 'special duty to fully and

14   fairly develop the record and to assure that the claimant's interests are considered . . . even when the

15   claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting

16   *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)).  "An ALJ's duty to develop the record further

17   is triggered only when there is ambiguous evidence or when the record is inadequate to allow for

18   proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

19          1.   Visual Impairments

20          With respect to his vision impairments, Plaintiff argues that the ALJ failed to adequately

21   develop the record because the consulting optometrist, Dr. Litwin, did not measure the mean

22   deviation in Plaintiff's visual field loss and the record does not include analysis of the cognitive

23   impact of amblyopia on decision making and pattern recognition.  *See* Pl.'s Mot. 10-12.  In assessing

24   vision impairments, mean deviation arises in step three of the social security disability evaluation

25   process, when the ALJ measures the claimant's disability/ies against criteria provided in a Listing of

26   Impairments contained in the Code of Federal Regulations.  *See Celaya*, 332 F.3d at 1180; 20 C.F.R.

27   § 404.1525(a).  Mean deviation is found under Listing 2.03, which measures contraction of the

28   visual field in the better eye based on either (A) "[t]he widest diameter subtending an angle around

**United States District Court**
For the Northern District of California

the point of fixation no greater than 20 degrees"; (B) "[a] mean deviation of -22 or worse, determined by automated static threshold perimetry . . ."; or (C) "[a] visual field efficiency of 20 percent or less as determined by kinetic perimetry . . . ." 20 C.F.R. pt. 404 subpt. P, app. 1 § 2.03. SSR 07-01p provides guidance on evaluating visual field pursuant to Listing 2.03. *See* SSR 07-01p, 2007 WL 2215467 (July 31, 2007).

Here, the ALJ was not obligated to further develop the record with respect to Plaintiff's mean deviation, as the other two measures of visual field weigh heavily against a finding of disability. With respect to the first basis for making a finding of disability pursuant to Listing 2.03, the widest diameter subtending an angle around the point of fixation, Plaintiff's widest diameter runs from meridian 30, which has a length of approximately 35, to meridian 210, which has a length of approximately 60, for a total diameter of 90 degrees, well above the maximum of 20 degrees specified in Listing 2.03. *See* AR 193; SSR 07-01p, 2007 WL 2215467, at *3-5 (showing method of calculation). As for the third basis for finding disability pursuant to Listing 2.03, visual field efficiency is measured "by adding the number of degrees seen along the eight principal meridians in [the applicant's] better eye and dividing by 500." 20 C.F.R. pt. 404 subpt. P, app. 1 § 2.00A7b; *id.* at tbl. 2. In this case, the chart produced by Dr. Litwin indicates that the sum of the eight meridians is approximately 336, which, divided by 500, amounts to a field efficiency of 67.2 percent, well over the 20 percent provided for in Listing 2.03. *See* AR 193. Given Plaintiff's strong performance on these two measures of visual field, it was not error for the ALJ to not order additional testing of mean deviation, a third measure of visual field.

Nor has Plaintiff demonstrated that it was error to not further develop the record regarding the cognitive impact of amblyopia on decision making and pattern recognition. The sole mention of amblyopia in Plaintiffs' medical records is in Dr. Litwin's report. *See* AR 191-93. There is no evidence that the relationship of amblyopia to decision making and pattern recognition was raised before the ALJ, as it does not appear anywhere in the record. Moreover, the cognitive effects of Plaintiff's amblyopia are measured indirectly in the mental impairment evaluations of Dr. Tobias and Dr. Morando. *See, e.g.*, AR 174 ("[t]he claimant demonstrated mildly to moderately decreased attention and concentration."); AR 179 (moderate difficulties in maintaining concentration,

United States District Court

For the Northern District of California

1    persistence, or pace).  Thus, it does not appear that further development of the record with respect to

2    Plaintiff's amblyopia would have resolved any ambiguities or inadequacies in the record.  *See*

3    *Mayes*, 276 F.3d at 459-60.

4              2.    Mental Impairments

5              Similarly, Plaintiff has not demonstrated that the ALJ's failure to further develop the record

6    with respect to his mental impairments constituted error.  In particular, Plaintiff contends that:  (1)

7    the mental status disability evaluation completed by Dr. Faith Tobias is inadequate because further

8    neuropsychiatric testing was required, (2) Dr. Tobias only considered section 2 of Plaintiff's SSA-

9    3368 form, and (3) Dr. Tobias did not consider Plaintiff's vision impairments in connection with her

10   diagnosis of depression.  *See* Pl.'s Mot. 12:24-13:10, 14:11-18.  Plaintiff has not demonstrated why

11   further neuropsychiatric testing was required; rather, he simply requested such testing.  *See* AR 64

12   (request for testing).  However, the record includes two comprehensive mental health evaluations,

13   both of which indicate, at worst, mild to moderate mental impairments.  *See* AR 172-75 (Tobias

14   report); AR 176-81, 221-22 (Morando report).  An ALJ is not required to order every medical

15   evaluation that could conceivably shed light on a claimant's condition, but rather just those that

16   would resolve ambiguities or inadequacies in the record.  *See Mayes*, 276 F.3d at 459-60.  Plaintiff

17   has not pointed to any specific ambiguity or inadequacy that the requested additional testing would

18   remedy, nor is any readily apparent from the record.

19             Similarly, Plaintiff has not demonstrated why failure to look at the rest of the SSA-3368 form

20   is material.  The SSA-3368 form, which is in the record, is a disability report including sections with

21   general information about Plaintiff as well as his alleged medical conditions, work experience,

22   medical records, medical tests taken, education, and vocational rehabilitation.  *See* AR 85-90.  In her

23   report, Dr. Tobias considered the section of the SSA-3368 form covering Plaintiff's alleged medical

24   conditions, which would be most material to her consideration of Plaintiff's mental impairments.

25   *See* AR 172.  Plaintiff has not put forth any argument as to why her failure to consider the rest of the

26   form would have rendered any different result.  In addition, Plaintiff gives weight to Dr. Tobias's

27   finding that Plaintiff was a "poor historian," but fails to point out what from Plaintiff's personal

28

United States District Court

For the Northern District of California

1    history might have led to a different assessment or how Plaintiff's personal history would be

2    material to a mental status disability evaluation.  *See* AR 172-75.

3         Lastly, Plaintiff contends that Dr. Tobias failed to consider his depression in light of his

4    vision impairments.  However, Dr. Tobias *did* consider Plaintiff's vision impairments, writing

5    extensively about his vision, albeit not specifically mentioning his amblyopia.  *See* AR 173-74.

6    Plaintiff seems to be arguing that, because there is a correlation between loss of vision and

7    depression, Dr. Tobias was under some obligation to consider the possible link between the two.

8    *See* Pl.'s Mot. 13-15.  However, Dr. Tobias was not tasked with determining the source of Plaintiff's

9    mental impairments, but rather their impact on his ability to perform work.  *See* AR 175 ("The

10   purpose of today's evaluation was to provide diagnostic and clinical impressions, and to evaluate the

11   claimant's current level of work-related abilities from a psychiatric standpoint.").  Plaintiff has not

12   demonstrated why further analysis of the *cause* of his mental impairments could result in any

13   different analysis of their *effect* on his ability to perform work.

14        In sum, Plaintiff has not demonstrated any material failure by the ALJ in developing the

15   record.

16   C.   Step Four

17        During step four, the ALJ is to analyze a claimant's ability to do past relevant work

18   considering the claimant's age, education, and work experience together with the claimant's RFC.

19   *See Celaya*, 332 F.3d at 1180.  In determining RFC, the ALJ must consider all relevant evidence,

20   including medical records, lay evidence, and pain.  *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883

21   (9th Cir. 2006).  Here, Plaintiff argues that the SSA (1) failed to properly consider his mental

22   impairments; (2) omitted relevant evidence of record in his RFC determination; (3) improperly

23   disregarded the symptom testimony of Plaintiff and his friends; and (4) failed to properly apply

24   Plaintiff's RFC to his past relevant work.

25        1.   Mental Impairment Limitations

26        Plaintiff argues at length that the ALJ did not include relevant mental impairment limitations

27   in his RFC determination as required by 20 C.F.R. §§ 404.1520a and 416.920a.  *See* Pl.'s Mot. 15-

28   17.  20 C.F.R. §§ 404.1520a and 416.920a outline a technique employed by the SSA to evaluate

United States District Court

For the Northern District of California

1    mental impairments, which is documented in a Psychiatric Review Technique Form (PRTF).  *Keyser*

2    *v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  "[W]here a claimant has presented

3    a colorable claim of mental impairment, the social security regulations require the ALJ to complete a

4    PRTF and append it to the decision, or incorporate its mode of analysis into his findings and

5    conclusions."  *Id.* at 726-27 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1204, 1214 (11th

6    Cir. 2005)).  Here, unlike in *Keyser*, in which the Ninth Circuit overturned an ALJ decision for

7    failure to include the PRTF or its analysis, the ALJ *did* attach a PRTF completed by Dr. Morando as

8    an exhibit to his decision, discussed its findings in his decision, and reconciled its findings with

9    those of Dr. Tobias.  *See* AR 19, 21-22 (discussion of PRTF and Tobias evaluation); AR 176-81

10   (PRTF).  Based on this process, the ALJ concluded that "[m]entally, the claimant can understand,

11   remember, and carry out at least simple instructions and non-detailed tasks but should not work in a

12   setting that requires constant/regular contact with the general public."  AR 20.  Thus, the ALJ's

13   decision complied with 20 C.F.R. §§ 404.1520a and 416.920a.

14       Plaintiff also argues that it was reversible error for the Appeals Council to fail to properly

15   consider Dr. Sweeney's opinion of Plaintiff's mental impairments, which was submitted after the

16   hearing in this matter.  *See* Pl.'s Mot. 17:14-17.  Dr. Sweeney indicated that Plaintiff occasionally

17   has problems with attention and concentration and is unable to perform to strict deadlines..  *See* AR

18   270.  These findings are consistent with other records considered by the ALJ.  *See* AR 21-22

19   (recognizing findings of mild to moderate limitations in his ability to work).  Plaintiff has not made

20   any showing for how consideration of Dr. Sweeney's opinion would have led to any different result.

21   Thus, the failure to consider this information does not constitute reversible error.

22       2.   Omission of Evidence in RFC

23       Plaintiff argues that the Appeals Council's failure to incorporate new evidence from Dr.

24   Sweeney submitted after the hearing in this matter constituted reversible error.  *See* Pl.'s Mot. 17:21-

25   18:14.  A district court "consider[s] on appeal both the ALJ's decision and the additional material

26   submitted to the Appeals Council."  *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

27       In particular, Plaintiff argues that the Appeals Council erred by not addressing Dr.

28   Sweeney's findings that Plaintiff had a thyroid problem, mild pain in the shoulders and back,

United States District Court

For the Northern District of California

1    difficulty making changes, difficulty filling out and reading change slips or price tags, the ability to

2    walk up to 2 blocks without rest, the ability to occasionally lift up to 10 pounds, and the likelihood

3    of being absent once or twice a month from work.  *See* Pl.'s Mot. 17:23-28.  However, Plaintiff has

4    not pointed to support in the record that these were, in fact, Dr. Sweeney's findings.  Nor has he

5    demonstrated why any of these findings would be material.  Plaintiff's past relevant work, as

6    determined by the ALJ, was as a *delivery driver*, and it does not appear that any of these findings

7    would lead to a determination that Plaintiff is not able to engage in such work.  *See* AR 22.

8    Moreover, these findings are not even necessarily supported by Dr. Sweeney's assessment.  For

9    example, in the section where Dr. Sweeney checks a box indicating that Plaintiff can occasionally

10   lift less than 10 pounds, he neglects to check boxes indicating the frequency at which he can lift 10,

11   20 or 50 pounds.  *See* AR 271-72.  However, elsewhere he indicates that "Mr. Lloyd [can] drive a

12   Ford 250 heavy duty truck and lift items weighing 25 to 60 pounds as he did in 1998 in his prior part

13   time work with his diagnosed visual acuity now and his shoulder and back issues."  *See* AR 269.

14   Elsewhere, Dr. Sweeney indicates that Plaintiff *can* fill out and reading change slips or price tags.

15   *See id.*  Dr. Sweeney does not discuss Plaintiff's thyroid problem anywhere in his assessment.  *See*

16   AR 267-73.  As Dr. Sweeney's actual report does not compel any different finding, it was not error

17   for the Appeals Council to fail to specifically address its findings.

18          3.    Symptom Testimony of Plaintiff and Friends

19          Plaintiff argues that the ALJ improperly discounted his own testimony and that of his friends.

20   *See* Pl.'s Mot. 20-23.  "If the ALJ wishes to discount the testimony of . . . lay witnesses, he must

21   give reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

22   One valid reason for discounting a lay witnesses testimony is if it contradicts other testimony on the

23   record.  *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  However, an ALJ may not discount

24   lay witness testimony simply because of that witness's alleged bias as a friend or family member of

25   the claimant.  *See Regennitter v. Coomm'r of Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir.

26   1999) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)).  The Ninth Circuit has

27   "credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide

28   legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be

11

1  resolved before a determination of disability can be made, and (3) it is clear from the record that the

2  ALJ would be required to find the claimant disabled were such evidence credited." *Smolen v.*

3  *Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

4          As for Plaintiff's testimony, the ALJ determined that Plaintiff's "statements concerning the

5  intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent

6  they are inconsistent with the above residual functional capacity assessment" and that his

7  "contention that his reading and writing skills are so poor that he requires assistance to get milk out

8  of the refrigerator is at odds with his ability to make deliveries without assistance and read signs and

9  addresses." AR 22. Plaintiff has not identified any of his statements that, if credited, would have

10 resulted in a finding of disability. *See* Pl.'s Mot. 22:18-26. The Court is left to speculate as to what,

11 in a record over 300 pages, Plaintiff argues was improperly discounted or why such discounting was

12 improper. Moreover, the ALJ had a substantial basis for giving greater weight to the medical

13 assessments which informed his RFC findings than to any subjective complaints of limitations

14 asserted by Plaintiff. Thus, Plaintiff has not demonstrated that the ALJ's credibility determination

15 as to his own testimony constituted reversible error.

16         On the other hand, the ALJ noted in his decision that, "[w]hile [he] considered the Third

17 Party Function Reports, [he] did not accord them significant weight since the authors were not

18 acceptable medical sources but were friends of the claimant hopeful of a positive outcome for him."

19 AR 22 (ALJ decision). As noted above, the fact that the source of third-party information is a friend

20 or family member of the claimant is not sufficient grounds, in and of itself, for discounted the

21 testimony. *See Regenniter*, 80 F.3d at 1289. However, Plaintiff has not demonstrated that the ALJ

22 would be required to find him disabled were his friends' testimony credited. *See Smolen*, 80 F.3d at

23 1292. Thus, on remand (as required for the reason stated below), the ALJ is advised that he may not

24 discount third-party witness testimony based solely on the fact that the witness is a friend or family

25 member, but must rather make further credibility determinations germane to that witness if he

26 wishes to discount such testimony, such as finding that the witness's testimony is contradicted by

27 other evidence on the record.

28

1          4.        Application of RFC to Past Relevant Work

2          Plaintiff argues that the ALJ's application of his RFC to his past relevant work was

3  reversible error, as (1) the ALJ failed to provide a function-by-function detailing of Plaintiff's past

4  relevant work pursuant to SSR 96-8p, (2) the vocational expert's testimony indicated that the

5  delivery driver job is performed at the medium work level while the ALJ found Plaintiff was limited

6  to light work, and (3) the hypothetical presented to the vocational expert and the ALJ's analysis of

7  Plaintiff's ability to perform past relevant work omitted relevant limitations to Plaintiff's RFC. *See*

8  Pl.'s Mot. 18:15-19:27.

9          SSR 96-8p outlines procedures for determining a claimant's RFC and applying it to a

10  claimant's past relevant work.  It provides that an RFC assessment "must first identify the

11  individual's functional limitations or restrictions and assess his or her work-related abilities on a

12  function-by-function basis . . . ."  *See* SSR 96-8p, 1996 WL 374184, at *1.  Contrary to Plaintiff's

13  assertion, SSR 96-8p does not require a function-by-function detailing of Plaintiff's past relevant

14  work, but rather a function-by-function analysis of Plaintiff's RFC.  *See id.*  Here, the ALJ did make

15  the determination that Plaintiff

16              has the [RFC] to perform a full range of work at all exertional levels
                except [he] has limited depth perception and thus cannot perform work
17              requiring binocular vision.  He should avoid even moderate exposure
                to the hazards of unprotected heights.  Mentally, [he] can understand,
18              remember, and carry out at least simple instructions and non-detailed
                tasks but should not work in a setting that requires constant/regular
19              contact with the general public.

20  AR 20.  Thus, the ALJ did not fail to follow SSR 96-8p in this respect.

21          Similarly, Plaintiff, without citing to the record, incorrectly characterizes the ALJ as having

22  found that Plaintiff could only perform light work, which is in direct contrast to the ALJ's finding

23  that Plaintiff has the RFC "to perform a full range of work at all exertional levels . . . ."  See AR 20.

24  Thus, this argument also fails.

25          On the other hand, Plaintiff's argument that the ALJ failed to present all relevant limitations

26  to the vocational expert and to consider these limitations in assessing Plaintiff's ability to perform

27  past relevant work has merit.  Failure to include relevant diagnostic and symptom evidence in a

28  hypothetical to a vocational expert may constitute reversible error.  *See Nguyen v. Chater*, 100 F.3d

1462, 1467 (9th Cir. 1996). Undoubtedly, in order to work as a delivery driver, Plaintiff would first need to be able to drive a delivery vehicle. In order to obtain a driver's license in California, an individual must take an examination that "shall include . . . [a] test of the hearing and eyesight of the applicant . . . ." Cal. Veh. Code § 12804.9(a)(1). The California Department of Motor Vehicles (DMV) has promulgated different visual acuity requirements for (1) noncommercial Class C drivers; and (2) Class A, Class B, and Commercial Class C drivers. A monocular applicant for a noncommercial Class C driver's license must take a screening test requiring minimum visual acuity of 20/40. *See* Cal. Dept. Motor Vehicles, Vision Conditions & Actions Chart, § 5.18 (1999) *available at* http://apps.dmv.ca.gov/dl/driversafety/vision_table.pdf (last visited Feb. 5, 2013). If he cannot meet that standard, he is referred to a vision specialist who will assess his vision and fill out a Report of Vision Examination form. *See* Cal. Dep't Motor Vehicles, Vision Conditions (2011) *available at* http://www.dmv.ca.gov/dl/driversafety/vision_cond.htm. Then, the DMV may schedule the applicant for a driving test to determine whether his vision condition impairs his ability to drive. *See id.* Based on the driving test, the DMV may withhold issuance of a driver's license, issue a restricted license, or issue a driver's license without restrictions. *See id.* On the other hand, an applicant for a Class A, Class B, or Commercial Class C driver's license *must* have "distant visual acuity of at least 20/40 (Snellen) . . . ." *See* Cal. Code Regs. § 28.18 (incorporating federal motor carrier safety regulations at 49 C.F.R. § 391.41); 49 C.F.R. § 391.41.

The ALJ completely omitted reference to Plaintiff's vision impairments in his left eye in his hypothetical to the vocational expert and in his own analysis of Plaintiff's ability to perform past relevant work. *See* AR 22, 313. As determined by Dr. Litwin, Plaintiff's best corrected visual acuity in his left eye as of October 2007 was 20/60, a material deterioration from his previously measured visual acuity of 20/30 in June 2005, which presumably was the same as or worse than his visual acuity when he last worked as a delivery driver in 2000. AR 159-63, 191.[3]

---

[3] Three months after Dr. Litwin's eye examination of Plaintiff, Dr. Brimmer determined that Plaintiff had corrected visual acuity in his left eye of 20/40. *See* AR 196. However, the ALJ makes no mention of this visual acuity finding, suggesting he did not lend it weight. *See* AR 21. Given that Dr. Brimmer conducted a broad internal medicine evaluation, of which Plaintiff's vision examination was but a small part, while Dr. Litwin specifically conducted a comprehensive optometric examination, it would be reasonable to lend Dr. Litwin's diagnosis more credence in this

United States District Court

For the Northern District of California

1   A best corrected visual acuity of 20/60 creates a substantial likelihood that Plaintiff could not

2   obtain the necessary driver's license for him to hold his past relevant work as a delivery driver.  It is

3   not evident from the record whether his delivery driver position would have required a Class A,

4   Class B, or Commercial Class C driver's license.  However, it is clear that Plaintiff, at least in

5   September 2008, could only qualify for a restricted driver's license, as he indicated at that time that

6   he did not drive because he is "blind in one eye so [he has] a restriction on [his] driver's license" and

7   "do[es]n't have the required glasses because [he] can't afford them."  *See* AR 113.  Yet, the ALJ did

8   not address Plaintiff's restricted driver's license or his vision impairments in presenting his

9   hypothetical to the vocational expert and assessing Plaintiff's ability to perform his past relevant

10  work as a delivery driver.[4]  Failure to do so was reversible error meriting remand.

11  D.      SSR 91-5p Analysis

12          Lastly, Plaintiff argues that the ALJ was obligated to make an appropriate SSR 91-5p good

13  cause determination regarding his failure to timely appeal the prior termination of his benefits in

14  1997 or 1998 and the denial of a previous disability application in 2002.  *See* Pl.'s Mot. 23.  SSR 91-

15  5p permits the SSA to determine whether or not good cause exists for extending the time in which a

16  claimant may request review of an adverse determination when the claimant presents evidence of

17  mental incapacity that prevented him from timely requesting review .  SSR 91-5p, 1991 WL 208067,

18  at *1 (July 1, 1991).   The Ninth Circuit has held that "Appeals Council decisions to refrain from

19  considering untimely petitions for review are not final decisions subject to review in federal court."

20  *Matlock v. Sullivan*, 908 F.2d 492, 493 (9th Cir. 1990). While *Matlock* was decided prior to the

21  issuance of SSR 91-5p, it applies equally here, where the ALJ did "not find a basis for reopening the

22

23  _____

24  regard.  *Compare* AR 194-98 (Brimmer report) *with* AR 191-93 (Litwin report).

25          [4]  The ALJ is cautioned that, if he is to rely on a vocational expert in step four of his analysis,
    he cannot rely solely on the vocational expert's opinion but must make specific findings as to how
26  Plaintiff's RFC does or does not prevent him from doing past relevant work.  *See Pinto v.
    Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("When the ALJ makes findings only about the
27  claimant's limitations, and the remainder of the step four assessment takes place in the vocational
    expert's head, we are left with nothing to review") (alterations, quotation marks, and citation
28  omitted).

15

1 claimant's prior Title XVI application" and found that "Social Security Ruling 91-5p . . . does not

2 apply in this case." AR 16 (ALJ decision).

3        Thus, the ALJ's failure to make an SSR 91-5p good cause determination is not a final

4 decision this Court may review.

5                              IV.    **CONCLUSION**

6        The Court may remand this case "either for additional evidence and findings or to award

7 benefits." *Smolen*, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

8 proper course, except in rare circumstances, is to remand to the agency for additional investigation

9 or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

10 Furthermore, "[r]emand for further proceedings is appropriate where there are outstanding issues

11 that must be resolved before a disability determination can be made, and it is not clear from the

12 record that the ALJ would be required to find the claimant disabled if all the evidence were properly

13 evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir 2011) (reversing and

14 remanding for the consideration of new evidence submitted to the Appeals Council instead of

15 awarding benefits).

16        In this case, the ALJ failed to properly take into account the impact of Plaintiff's vision

17 impairments on his ability to perform past relevant work as a delivery driver, especially in light of

18 DMV medical requirements.  It is possible that the claim might not be resolved at Step Four, and

19 may thus require further analysis at Step Five.  Thus, the Court **REMANDS** this case for further

20 consideration.

21        On remand, the ALJ is directed to reassess Plaintiff's RFC in light of his visual impairments,

22 to reconsider his Step Four conclusion in light of this reassessment, and to proceed to step five, if

23 necessary.

24 ///

25 ///

26 ///

27 ///

28 ///

1    For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED** and the

2  Commissioner's cross-motion for summary judgment is **DENIED**.

3    This order disposes of Docket Nos. 18 and 24.

4

5    IT IS SO ORDERED.

6

7  Dated:  February 8, 2013

8

9  _____
   EDWARD M. CHEN

10   United States District Judge

**United States District Court**
For the Northern District of California